UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Robin M., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 18 CV 50073 |
| | ) | Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

### **MEMORANDUM OPINION AND ORDER**[1]

Plaintiff, who is now 43 years old and who stays at home taking care of her three children, filed applications for disability benefits in May 2015. She worked full-time for at least 18 years, but stopped working in 2013 because of an elbow injury suffered at work. The diagnosis was right lateral elbow epicondylitis. For that injury, she filed a worker's compensation claim that was still pending at the time of the administrative hearing in this case. Although the elbow injury also forms one part of her disability claim here, she has raised no arguments in this appeal relating to that particular impairment, nor to a separate later ankle injury. Instead, this appeal focuses on a separate and more diffuse set of symptoms. These include fatigue, muscle and joint pain, lack of focus, headaches, depression, and anxiety. Plaintiff's doctors have not definitively determined the cause (or causes) for these symptoms, although they have identified thyroid problems, scleroderma, and degenerative disc disease as possible causes. After a hearing, at which no medical expert was called, the administrative law judge ("ALJ") issued a decision finding that plaintiff could do sedentary work. The key part of

---

[1] The Court will assume the reader is familiar with the basic Social Security abbreviations and jargon.

the decision was the ALJ's determination that plaintiff's testimony was not entirely consistent. Plaintiff's main argument here is that this finding, which will sometimes be referred to as the credibility finding for the sake of convenience, was flawed. Although the Court does not find all of plaintiff's criticisms are valid, the Court agrees that enough questions have been raised to justify a remand.

## BACKGROUND

In May 2015, which was around the time plaintiff filed her disability applications, she went to her primary care physician, Dr. Katerina Doronila-Hughes, complaining about low energy, depression, poor appetite, inability to focus, stress, exhaustion, and recent weight loss. Dkt. #10 at 1. Dr. Doronila-Hughes ordered lab work to check for a connective tissue disease. Lab results showed elevated SCL-70 antibodies. Dr. Doronila-Hughes referred plaintiff to an endocrinologist, Dr. Shalini Paturi, to address possible thyroid problems. Another condition that was suspected was systemic scleroderma, a chronic connective tissue disease.[2] Plaintiff had been reporting that she had dry skin and brittle nails. Plaintiff was referred to Dr. Robin Hovis, a rheumatologist, who examined plaintiff on July 13, 2015. Dr. Hovis listed three assessments in the treatment notes for the visit: arthralgia, systolic murmur, and +SCL70 thyroid antibodies. R. 680. However, Dr. Hovis indicated that there were "[n]o clinical findings of scleroderma." *Id*. Dr. Hovis prescribed Gabapentin, and scheduled a follow-up visit in three months. It is not clear whether plaintiff ever followed up, but she continued treatment with Dr. Doronila-Hughes and Dr. Paturi. They prescribed some pain medications. Dr. Doronila-Hughes offered to refer plaintiff for counseling, but plaintiff declined the offer. R. 582.

---

[2] This description is taken from a website as quoted in plaintiff's brief. *See* Dkt. #10 at 2, n.1 ("scleroderma.org.").

On March 2, 2017, the ALJ held an administrative hearing. Plaintiff was represented by counsel who argued in a short opening statement that plaintiff could not work full-time "mainly due to the ongoing effects of scleroderma as well as decreased thyroid functioning." R. 41. Counsel also argued that plaintiff suffered from a work-related injury to her elbow in 2013; that she broke her ankle the previous year and had complication with it; that her physical symptoms had "worsened both her depression and anxiety"; and that she had "gained some weight due to inactivity." R. 41-42.

Plaintiff then testified about her symptoms. She stated that she was not able to "sit or stand too long." R. 50. She got tired quickly and took five to six naps every day. On a typical day, she woke up early to get her three children off to school and then would nap. The length of the naps varied from a half hour to "three to four hours at a time." R. 51. Plaintiff stated that she took Norco and Xanax. R. 57. Plaintiff did not know for certain what was causing these problems. She stated that she thought her problems had "a lot to do [] with [her] scleroderma" and also speculated that stress and an autoimmune disease might be causes. R. 50.

On June 1, 2017, the ALJ issued his decision. At Step Two, he found that the following impairments were severe: "hypothyroidism; right lateral elbow epicondylitis; degenerative disc and joint disease of the cervical spine; and depression with anxiety." R. 18. However, he did not find the scleroderma qualified as a severe impairment. The ALJ noted that Dr. Doronila-Hughes diagnosed plaintiff with scleroderma "based on [a] high SCL-70 count," but the ALJ chose to rely on Dr. Hovis's finding that there was "no clinical evidence" for this condition. R. 19.

The ALJ found that plaintiff had the residual functional capacity ("RFC") to do sedentary work. The ALJ followed the traditional two-part framework, first finding that plaintiff had *some* impairments that collectively "could reasonably be expected to produce" plaintiff's pain and

other symptoms, but then concluding that plaintiff's allegations were not "entirely consistent" with the medical and other evidence. R. 22-23.

The ALJ then summarized the medical evidence (sometimes referred to as the "objective evidence"), devoting a paragraph each to plaintiff's elbow problems, spine problems, joint pain, thyroid problems, and psychological problems. The ALJ then considered the "other evidence," ostensibly evaluating the seven factors listed in SSR 16-3p.[3] But the ALJ did not analyze these factors in a rigorous way. Instead, the ALJ set forth several rationales in the following discussion:

> **[Rationale #1]** The claimant's allegations of extreme fatigue and need for frequent rest and nap breaks are not supported anywhere in the medical records. **[Rationale #2]** She manages to perform all basic household activities and is apparently able to care for young children at home, which can be quite demanding both physically and emotionally, without any particular assistance.
>
> **[Rationale #3]** Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. She rejected both surgical and conservative management of right lateral epicondylitis, preferring instead to monitor [the] condition (16F/16-18). Furthermore, the record reflects that the prescribed treatment and medications have improved her condition (15F/21-22; 13F/33, 48, 63).

R. 24 (bolded labels added by the Court).[4]

## DISCUSSION

Plaintiff raises two arguments for a remand. The first and primary one is that the ALJ's credibility rationales were flawed and that the ALJ ignored nearly all of the seven 16-3p

---

[3] As quoted by the ALJ, these factors are: "1) the claimant's activities of daily living, 2) the location, duration, frequency, and intensity of pain or other symptoms, 3) precipitating and aggravating factors, 4) the type, dosage, effectiveness, and side effects of medications taken to alleviate pain or other symptoms, 5) treatment, other than medication, for relief of pain or other symptoms, 6) any measures other than medication used to relieve pain or other symptoms, and 7) any other factors concerning functional limitations and restrictions due to pain or other symptoms." R. 24.
[4] Plaintiff raises no arguments about the opinion evidence. The ALJ noted, among other things, that none of plaintiff's treating physicians provided an opinion about the non-elbow-related symptoms.

factors—in other words, the analysis was both flawed and incomplete. The Court finds that the best starting point is to consider the ALJ's rationales on their own terms.

As summarized above, the ALJ relied on the lack of objective evidence and then offered several "other" rationales. The Court will consider them individually.[5] In doing so, it is important to remember that plaintiff's chief complaint was fatigue. She supposedly took five to six naps every day, with some naps lasting three to four hours.

**Objective Evidence.** The main problem with this portion of the decision is that the ALJ never squarely addressed how the objective evidence was relevant to specific symptoms, such as fatigue. The ALJ presented the medical facts in a narrative, offering little explicit analysis. Also, no medical expert was called at the hearing to explain the possible connections between the objective tests and the alleged symptoms. As a result, this Court must make educated guesses about what the ALJ believed the objective evidence was indicating. As noted above, plaintiff's doctors were somewhat unsure, and not in entire agreement, about the causes of the fatigue and other symptoms such as muscle pain and headaches. The main contenders appear to have been thyroid problems and scleroderma, and perhaps also degenerative disc disease, although the latter condition was not discussed in much detail in the ALJ's decision or in the briefs here. At Step Two, the ALJ concluded that plaintiff's scleroderma was not a severe impairment, leaving the thyroid problems as presumably the most likely cause. But in the ALJ's discussion of this condition, the ALJ seemed to cast doubt on how severe it really was. The ALJ stated as follows:

> The claimant has had hypothyroidism since 2009, four years prior to her alleged onset date, with thyroid nodules that are common and asymptomatic (14F/42, 62). A parathyroid scan was negative for parathyroid adenoma (13F/16).

---

[5] The Seventh Circuit has repeatedly stated that a court should not overturn a credibility finding unless it was "patently wrong" and has further stated that not all of the ALJ's rationales need be found valid to affirm. *Sawyer v. Colvin*, 512 Fed. Appx. 603, 607 (7th Cir. 2013); *Halsell v. Astrue*, 357 Fed. Appx. 717, 722 (7th Cir. 2009).

R. 23. Because the ALJ did not indicate what takeaway conclusions were being drawn from these facts, questions naturally have arisen. Did the ALJ believe that the thyroid problems played *no* role in *any* of plaintiff's conditions? If not, then what was causing the fatigue problem? Or did the ALJ believe that there was no medical cause for the fatigue? Or was it merely that the thyroid problems were relatively minor and would only cause a mild fatigue (*i.e.* more limited than plaintiff portrayed it)? If so, how much less so? As the record exists, there are too many gaps and unanswered questions. These questions should be clarified on remand with the help of a medical expert. It is possible that gaps will remain even after an expert is consulted, but if so, then it will be clearer about what inference can be properly drawn.

The Court next considers the "other" rationales set forth in the two paragraphs quoted above.

**Rationale #1.** The first rationale is short, only one sentence long, but is arguably the most important one because it addresses the question of fatigue. The ALJ stated that plaintiff's allegation of extreme fatigue and her need for frequent naps were not "supported anywhere" in the record. The ALJ did not provide any further explanation beyond this categorical assertion, perhaps on the theory that if nothing is there, then there is nothing to discuss. Nor did the ALJ elaborate on what the arguably vague statement—allegations were "not supported"—meant in concrete terms.

Plaintiff essentially argues that the ALJ's statement was factually wrong. Plaintiff asserts that, contrary to the ALJ's statement, she "often" complained about fatigue to her doctors. *See* Dkt. #10 at 6 (11 record citations). In other words, plaintiff basically construes the ALJ's statement to be a claim about the lack of complaints of fatigue, rather than a claim that there was no evidence to confirm the allegation of fatigue. In its response brief, the Government did not

address this line of argument, nor dispute plaintiff's claim that she complained often. Accordingly, this Court finds that this first rationale was flawed, mostly because it was vague and conclusory and perhaps relied on an "error of fact." *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (an ALJ may not base a credibility determination on "errors of fact or logic"); *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (remanding because the ALJ's credibility determination "misstated some important evidence and misunderstood the import of other evidence").

**Rationale #2.** The ALJ stated that plaintiff "manages to perform all basic household activities and is apparently able to care for young children at home." R. 24. Putting aside the uncertainty suggested by the word "apparently," the ALJ concluded that plaintiff's daily activities undermined her fatigue and other allegations.

Plaintiff raises a traditional counter-argument—namely, cherrypicking. Plaintiff argues that the ALJ left out the following mitigating points, among others: although plaintiff gets her children ready for school, she takes naps after they're gone; although she cleans, she only does so during periods when she feels better; she loses track of dates and times; and her children are old enough to do many things themselves. Dkt. #10 at 6.

Plaintiff is correct that the ALJ did not fully acknowledge these points. This is not a case where the ALJ was relying on an outside source to contradict plaintiff's self-reports. The ALJ's summary is based solely on plaintiff's testimony and the Adult Function Report she completed— the same two sources that plaintiff argues contained these mitigating facts. The ALJ also should have acknowledged that, unlike with work activities, a claimant often can perform household activities under a more flexible standard and then these activities are typically judged by a lower standard of performance. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Hamilton v.*

7

*Colvin*, 525 Fed. Appx. 433, 438 (7th Cir. 2013) ("We have admonished ALJs to appreciate that, unlike full-time work, the 'activities of daily living' can be flexibly scheduled"). Also, the ALJ's observation that "young children" can be "quite demanding both physically and emotionally" seems more fitting for a person taking care of infants or toddlers, not for pre-teens, as is the case here.[6] R. 24.

In sum, the Court finds that the ALJ's reliance on plaintiff's daily activities was not based on a complete summary. At the same time, the Court does not find that the ALJ's discussion contained any outright factual error or egregious overstatement. This second rationale does not cut strongly either way.

**Rational #3.** The third and final rationale was the claim that plaintiff's treatment was "essentially routine and/or conservative in nature" and that this treatment led to improvement. R. 24. But the ALJ's discussion of the evidence supporting this claim only related to plaintiff's elbow problem.

Plaintiff argues that the ALJ's conclusion overlooked salient facts about her treatment for her other problems and symptoms. Plaintiff notes that, among other things, she had "regular follow up with two specialists (the endocrinologist and rheumatologist)"; her thyroid levels were checked regularly; she took Gabapentin but discontinued it because of side effects; and she had no significant treatment gaps. Dkt. #10 at 7. In its response, the Government only briefly addresses this issue, basically just reiterating the ALJ's conclusion that plaintiff's treatments were routine and conservative. Dkt. #15 at 6. The ALJ and the Government may ultimately be proven correct on remand. On the surface, plaintiff's treatments do not appear to be extensive, at least as compared to some of the treatment protocols this Court sees in disability case. However,

---

[6] At the time of the hearing, plaintiff's children were 13, 12, and 8. R. 59-60.

8

to properly assess whether a treatment is conservative, it is necessary to know what treatments are available. This in turn leads back again to the same underlying unresolved questions about the possible causes for these diffuse symptoms.

In sum, it is far from clear that plaintiff will be able to prevail in her claim on remand, but the Court finds that the record contains too many unanswered questions and needs to be developed further with the assistance of an impartial medical expert. The ALJ and the medical expert should address these issues explicitly, and also should specifically address each of plaintiff's symptoms individually. Having found that this case should be remanded based on this first argument, the Court need not address plaintiff's second argument, which is that the vocational expert erred in the Step Five finding that a significant number of jobs were available in the national economy. However, on remand, plaintiff should explicitly raise these arguments, if still appropriate, with the ALJ and the vocational expert during the hearing to avoid a finding of forfeiture in any subsequent appeal to this Court.

## CONCLUSION

For the above reasons, plaintiff's motion for summary judgment is granted, the Government's motion is denied, and the case is remanded for further proceedings.

Date: May 31, 2019         By: _____
                                Iain D. Johnston
                                United States Magistrate Judge